UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW MICHAEL HANSEN,<br><br>Defendant. | Case No. 2:19-mj-00969-DJA<br><br><br>**ORDER** |

This matter is before the Court on Defendant's Motion to Dismiss (ECF No. 8) filed on March 3, 2020. The Government filed a Response (ECF No. 11) on March 13, 2020. The Defendant filed a Reply (ECF No. 12) on March 20, 2020. The Court finds this matter properly resolved without further argument or an evidentiary hearing.

**I.      BACKGROUND**

The Defendant Matthew Michael Hansen is charged in a three count Complaint as follows: In Count One, Negligent Boating in violation of 36 CFR §3.8(b)(8); in Count Two, 2 with Failure to Keep Proper Lookout in violation of 36 CFR §3.2(a) and 33 CFR §83.05; and in Count Three, with Failure to Complete the Mandatory Boating Education Requirement in violation of 36 CFR §3.6C and NRS §488.730(3). (ECF No. 2). In his motion to dismiss, Hansen utterly fails to address any of the underlying facts related to these three charges. (ECF No. 8). While the underlying facts are not determinative of the Court's decision on the motion as it relies primarily on legal reasons in support of dismissal, a brief outline of the facts charged in the complaint is necessary for context in consideration of the Court's decision.

According to the complaint, Hansen was driving a pontoon boat in the Lake Mead National Recreation Area when he decided he wanted to beach it. (ECF No. 11). Hansen had the boat propeller trimmed up (or out) of the water. (*Id*). Hansen attempted to beach the boat

without assistance but was unable to do so. (*Id*). Several people, including an individual identified as L.B., entered the water to assist Hansen. (*Id*). Hansen lowered the propeller into the water and engaged the engine. (*Id*). Without looking to see who was in the way in the water, Hansen engaged the engine at full throttle and initiated a turn. (*Id*). This turning of the propeller caused L.B. to be sucked into the propeller blade causing severe lacerations, including significant injury to her leg, which was ultimately amputated below the knee. (*Id*).

Hansen moves to dismiss Counts 1 and 2 of the Complaint because he claims that the regulations charged conflict with other statutes addressing the same conduct. Hansen argues that these statutes provide only for civil penalties for violation while the regulations under which he is charged specify criminal penalties. Hansen argues that because an agency's regulations may never supersede a Congressional statute, the regulations are invalid as they impose criminal liability for conduct which is only subject to civil penalty under federal statute. Finally, Hansen argues that Count 1 must be dismissed because imposition of criminal liability for ordinary negligence violates due process.

The Government responds that the National Park Service, not United States Coast Guard statutes, regulates boating in national parks. (ECF No. 11). The Government further argues that the National Park Service has broad regulatory authority over the waters within its parks, which includes boating on those waters. The Government also argues the National Park Service is authorized to enforce criminal penalties of its regulations pursuant to 18 U.S.C. §1865. Finally, the Government argues the regulations making Hansen's conduct criminal do not violate due process because the National Park Service is empowered to make and enforce such regulations under 54 U.S.C. §100751.

Hansen replies that the wholesale adoption of the United States Code section relating to negligent boating and United States Coast Guard laws by the National Park Service creates a conflict between that statute and the charged regulation that must be resolved in favor of the statute. (ECF No. 12). Finally, Hansen replies that the regulation under which he is charged alleging simple negligence runs afoul of well- established principles that criminal liability must

1  be premised on a consciousness of wrongdoing.  For those reasons, Hansen is requesting that this
2  Court dismiss Counts 1 and 2.  Hansen does not request dismissal of Count 3.

**II.    DISCUSSION**

**A. The National Park Service Has Broad Regulatory Authority to Establish Regulations to Regulate Water Within its Boundaries That are Complimentary to Coast Guard Laws.**

Federal regulations are rules created by federal agencies to interpret and implement laws Congress passes regarding those agencies.  See e.g., *Manhatten General Equipment Company v. Commissioner of Internal Revenue*, 297 U.S. 129, 134 (1936); *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-3 (1984).  An agency is required to look at the statute and determine what rules should be fashioned to implement the program created by Congress.  *Morton v. Ruiz*, 415 U.S. 199, 231 (1974).

The National Park Service was created by Congress pursuant to the Organic Act of 1916.  Its authority expanded with the 1970 National Park Service General Authorities Act, as amended in 1976.  In 2014, these authorities were recodified.  (See, 54 U.S.C. et. seq.)  54 U.S.C. §100751 was among other regulations that were recodified and it addresses boating and other activities on or relating to water within the National Park Service.  That regulation specifically states that the Secretary of the National Park Service may prescribe regulations concerning boating or other activities on or relating to water located within the national park system, including water subject to the jurisdiction of the United States.  54 U.S.C. §100751(b).  It further states that the subsection shall be complementary to, and not in derogation of, the authority of the Coast Guard to regulate the use of water subject to the jurisdiction of the United States.  (*Id*).  Also, it provides for criminal penalties pursuant to 18 U.S.C. §1865.[1]  This National Park Service regulation, and the two under which Hansen is charged, are promulgated pursuant to the National Park Services' broad regulatory authority over waters within national parks.

---

[1] The penalties provide for up to six (6) months in custody and/or a fine, making the violations Class B misdemeanors.

Any question that the Secretary, acting through the Director of the Park Service, has broad regulatory authority to administer rules related to park behavior was unequivocally answered by the United States Supreme Court in *Sturgeon v. Frost*, 139 S.Ct. 1066 (2019).  There, in considering a challenge to the National Park Services' regulatory authority under the Alaska National Interests Land Conservation Act, the Supreme Court clarified that the Director of Park Services has broad authority to regulate waters within the park system.  (*Sturgeon,* at 1076). Citing 54 U.S.C. §100751 the Supreme Court noted that the Secretary "shall prescribe such regulations as (he) considers necessary or proper for the use and management of system units." (*Id*, citing §100751(a)).  And he may, more specifically, issue regulations concerning "boating or other activities on or relating to water located within system units."  (*Id*, citing §100751(b)).  The Supreme Court concluded that "the Park Service freely regulates activities on all navigable (and some other) waters "within a park's boundaries".  (*Id*, citing 236 C.F.R. §1.2A3).  Thus, there is no question that the National Park Service has broad regulatory authority over the waters within the parks and that authority is not superseded by the United States Coast Guard statutes.

While the National Park Services adopted Coast Guard laws and regulations to assist in governing its waters, that adoption was explicitly designed so that the regulations would be complimentary.  *See* 54 U.S.C. §100751(b).  The National Park Service explained this point when publishing the most recent revisions of its regulations:

> "There has been some general confusion about the order of applicability or hierarchy of adopting USCG regulations and state boating safety laws and regulations in relation to NPS specific regulations contained in Part 3. The required order of applicability, or hierarchy, of laws and regulations on park waters is as follows:
>
> 1. **Regulations in Title 36, Code of Federal Regulations (CFR) will apply over any comparable law or regulation.**
>
> 2. Laws and regulations of the USCG adopted pursuant to § 3.2 (a) will apply over any comparable state law or regulation.
>
> 3. Non-conflicting state boating safety laws and regulations that are not addressed by either 36 CFR or by the USCG are adopted pursuant to 3.2(b). The NPS is not adopting state water use laws or regulations unless specifically indicated in Part 3.

1  **Where the NPS, USCG, and State have a comparable but different rule, the NPS rule applies first**, except where we have specifically adopted the more stringent rule in our regulation (See 3.10(a)(2)). The USCG rule will apply when no NPS rule exists and if the NPS and USCG do not have a rule then the State boating safety rule applies."

72 FR 13694, Supplementary Information, found at

https://www.federalregister.gov/documents/2007/03/23/E7-5111/boating-and-water-use-activities (last accessed March 9, 2020) (emphases added); *see also* 54 U.S.C. § 100751(b) (explaining that the Park Service boating regulations and Coast Guard laws will be complementary).  This clearly dispels any confusion regarding whether or not the Coast Guard law supersedes the National Park Service regulation – in favor of the National Park Service.

The Defendant's argument that the Coast Guard statute trumps the National Park Service regulation relies entirely on two cases.  (ECF No. 8 at p.2).  However, as outlined below, these cases are inapposite and do not stand for the proposition that the Coast Guard statute in question trumps the National Park Service regulations.

In United *States v. Doe*, 701 F.2d 819 (9th Cir. 1983), the Ninth Circuit did find that where there is a clear conflict between a federal statute and an administrative regulation, the statute controls.  *Doe* at 823.  However, in *Doe* there was a direct conflict in a statute and regulation that applied equally to the defendant in that case.  Specifically, the defendant in *Doe* was a juvenile arrested for committing a crime and fingerprinted in accordance with an INS regulation that conflicted with the fingerprint procedures of the Juvenile Delinquency Act.  In resolving that conflict, the court found that the statute trumped the regulation. Here, there is not a direct conflict between the regulation and the statute.  As outlined in 54 U.S.C.A. §100751, the regulation shall be complimentary to the Coast Guard statute and simply provides for criminal penalties when the act occurs on a body of water within the National Park Service boundaries.  This clearly is a lawful use of the broad power given to the National Park Service to regulate water within National Park Service boundaries, such as Lake Mead.

Likewise, the Defendant's reliance on *United States v. Maes*, 546 F.3d 1066 (9th Cir. 2008) is misplaced.  In *Maes*, the defendant was stopped on Department of Veteran Affairs ("VA") property and was found to have possessed drugs.  Maes could have been charged with drug possession under a regulation governing VA property or under a statute charging criminal possession of drugs.  Both the regulation and the statute applied equally to the acts that led to the charges against Maes.  Maes argued that the VA regulation that provided for lesser criminal culpability should supersede the general criminal possession statute.  However, the court found that Maes had not shown that Congress intended the regulation to supersede the general criminal possession statute and the prosecutor was within his discretion to choose which to charge.  *Maes* at 1070.  Thus, the Defendant's reliance on *Maes* for the proposition that the Coast Guard statute would trump the National Park Service regulation is misplaced and does not require the Court to dismiss counts one and two under these circumstances.

The Defendant's framing of the issue in this case as whether or not the Coast Guard criminal statute trumps a National Park Service regulation is incorrect.  Rather, the question is whether the criminal regulations under which Hansen is charged are a proper use of the National Park Service's regulatory authority to govern the waters within Park Service jurisdiction.  There is no question that the National Park Service has been given broad authority to regulate the activities on all navigable waters within the park's boundaries.  The two regulations under which Hansen has been charged are clearly an exercise of that delegated authority.  That authority is not trumped by similar Coast Guard statutes that are complimentary to the National Park Service regulation.  Therefore, the Court finds that the Coast Guard statutes do not trump the National Park Service regulations.  For these reasons, the motion to dismiss on this basis must be denied.

**B. The National Park Service Regulation Imposing Criminal Liability for Ordinary Negligence Does Not Violate Due Process of Law**

It is well established that a public welfare statute may subject a person to criminal liability for his or her ordinary negligence without violating due process.  *United States v.*

*Hanousek*, 176 F.3d 1116, 1121 (9th Cir. 1999).  Public welfare offenses are offenses that "involve statutes that regulate potentially harmful or injurious items." *Staples v. United States*, 511 U.S. 600, 607 (1994).  As the Supreme Court stated in *Staples*, "We have reasoned that as long as a defendant knows that he is dealing with a dangerous device of a character that places him 'in a responsible relation to a public danger,' he should be alerted to the probability of strict regulation." (*Id*, internal citation omitted).  The Defendant argues that a recreational boat is not the type of harmful or injurious item that would normally be the subject of a public welfare offense. (ECF No. 8 at p. 8).  The Defendant further argues "[t]here is nothing inherently dangerous about operating a recreational boat." (*Id* at p. 9).  However, nothing could be further from the truth, especially not when considering the circumstances of this case.

A recreational boat, especially a pontoon boat such as the one in question here, is exactly the type of dangerous instrument for which the negligence standard applies.  This is exactly why there are rules and regulations promulgated to ensure the safety of those operating the vessel as well as those occupying the vessel.  That is also the reason that there is a regulation requiring boaters to complete mandatory boating education requirements, something that Hansen's failure to do resulted in count three.  Thus, the nature and character of the item regulated (boating) is clearly such that its regulation is a public welfare statute for the protection of those using the water within the National Recreation Area.

Criminalizing negligent boating and failure to keep a proper lookout are both valid exercises of the Park Service's broad ability to regulate conduct for the protection of the public.  *See United States v. Bohn*, 622 F.3d 1129, 1135 (9th Cir. 2010) (upholding two Park Service regulations, for failing to wear a helmet and obey a lawful order, as constitutional because they directly related to protection of the public).  These regulations do not violate the Defendant's due process rights by providing criminal penalties based on a criminal negligence standard.  Significantly, Defendant did not cite any cite law supporting his position for these specific regulations, nor is the Court aware of any such case law finding the lower negligence standard unconstitutional.  Indeed, the Court is not aware of any such

due process challenge regarding the mens rea requirement as to these regulations being brought previously. Accordingly, because these regulations are clearly for the purpose of the public's welfare, the Court finds the lower negligence standard is not unconstitutional. For these reasons, Hansen's motion to dismiss on this basis is denied.

IT IS THEREFORE ORDERED that Defendant Hansen's Motion to Dismiss (ECF No. 8) is **DENIED**.

DATED: April 30, 2020

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE